IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD SPADDY,<br><br>                *Plaintiff*,<br>v.<br><br>SOUTHEASTERN PENNSYLVANIA<br>TRANSPORTATION AUTHORITY, *et al.*,<br><br>                *Defendant*s. | CIVIL ACTION<br>No. 15-2995 |

PAPPERT, J.                                                                                                           July 20, 2016

<u>MEMORANDUM</u>

       Richard Spaddy ("Spaddy") sued the Southeastern Pennsylvania Transportation Authority ("SEPTA"), SEPTA Police Officer J. Martin ("Officer Martin") and other Unnamed SEPTA Police Officers[1] (collectively "Defendants") alleging claims under 42 U.S.C. Section 1983 and Pennsylvania state law.  Spaddy's claims stem from two altercations between himself and the officers where they allegedly beat, arrested and detained him without probable cause.  Defendants filed a motion to dismiss which the Court grants in part and denies in part.

I.

A.

      On June 8, 2013 Spaddy entered the Broad Street and Cecil B. Moore Avenue SEPTA station in Philadelphia.  (Am. Compl. ¶ 5, ECF No. 24.)  Spaddy paid a discounted fare for his

---

[1] "Use of John Doe defendants is permissible in certain situations until reasonable discovery permits the true defendants to be identified." *Blakeslee v. Clinton Cty.*, 336 F. App'x 248, 250 (3d Cir. 2009) (citing *Klingler v. Yamaha Motor Corp., U.S.A.*, 738 F. Supp. 898, 910 (E.D. Pa. 1990).  However, "[i]f reasonable discovery does not unveil the proper identities . . . the John Doe defendants must be dismissed." *Id.* (citation omitted).  Because the motion was filed on behalf of all Defendants, the Court address the claims relating to the unnamed officers.  Should reasonable discovery fail to unveil the identities of these officers, the Court will dismiss them at the appropriate time.  *See, e.g.*, *Scheetz v. Morning Call, Inc.*, 130 F.R.D. 34, 37 (E.D. Pa. 1990) ("Fictitious parties must eventually be dismissed . . . if discovery yields no identities.").

1

train ticket because of his "disability status."² (*Id.*) Before he could board, two unnamed SEPTA police officers approached Spaddy, grabbed him by the arms and told him "he was not getting on the fuckin train." (*Id.* ¶ 5.) Spaddy told the officers that he had a Medicare card permitting him to ride the subway for a reduced fare. (*Id.* ¶ 6.) After Spaddy protested, the officers allegedly threw him against a wall, handcuffed him, detained him for about twenty minutes and wrote a false report alleging that he had tried to board the subway without paying. (*Id.*) The officers then released Spaddy and told him to leave. (*Id.* ¶ 7.) After Spaddy continued to protest, the officers grabbed and forcefully threw him up the stairs and out of the subway station. (*Id.*)

Spaddy continued to protest as he stood outside the station. (*Id.* ¶ 8.) A number of other SEPTA police officers then arrived at the scene, one of whom allegedly called Spaddy a "nigger." (*Id.* ¶ 9.) Spaddy stated he was going to call his attorney and have the officers fired. (*Id.*) As Spaddy walked away, the officers allegedly followed him, grabbed him, threw him against a car, handcuffed him and forced him to the ground. (*Id.*) While Spaddy lay on the ground, Officer Martin and other unnamed officers repeatedly punched and kicked him, kicked mud and dirt into his face and eyes, maced him and hit him in the legs with their "blackjacks." (*Id.* ¶ 10.) The officers also smashed the screen of Spaddy's cell phone. (*Id.* ¶ 12.) An unknown male videotaped this beating. (*Id.* ¶ 11.) Spaddy alleges that he had not done anything to warrant the force used against him. (*Id.* ¶ 10.)

The officers allegedly detained Spaddy for approximately half an hour despite the fact that they saw him writhing in pain. (*Id.* ¶ 13.) During this time, "a supervisory SEPTA police officer in a white shirt" arrived. (*Id.* ¶ 14.) In the supervisor's presence, the officers ridiculed Spaddy's complaints about the mud and dirt in his eyes. (*Id.*) The officers falsely informed the supervisor that Spaddy had threatened to kill them. (*Id.*) The supervisor allegedly stated "I was

---

²     Spaddy does not allege a specific disability. (*See generally* Am. Compl.)

not here," and left without ordering the officers to take Spaddy to the hospital or stop using force against him. (*Id.*)

After detaining Spaddy for approximately half an hour, the officers placed him in a police car for ten to fifteen minutes and continued to ignore his "obvious need for immediate medical treatment for his demonstrable pain and agony." (*Id.* ¶ 13.) The officers then took Spaddy to Temple University Hospital for medical treatment where he was diagnosed with "chemical conjunctivitis" and prescribed medication. (*Id.* ¶¶ 13, 15.) Spaddy was ultimately charged and found guilty of disorderly conduct and theft of services stemming from his conduct during the June 8, 2013 incident. *See* Docket, *Commw. of Pa. v. Richard M. Spaddy*, No. MC-51-SU-0013872-2013 (Phila. Cty. Ct. C.P. Oct. 16, 2013) (docket entries 2–3).[3]

### B.

On the evening of July 11, 2014 Spaddy again attempted to board a subway train at the Broad Street and Cecil B. Moore Avenue station after paying his fare. (*Id.* ¶ 19.) Around that time, unnamed officers arrived at the station in response to an unrelated situation involving several children who had jumped the turnstile without paying their fares. (*Id.* ¶ 20.) Spaddy made a comment about changing the fares, at which point one of the officers allegedly told him to "shut the fuck up." (*Id.* ¶ 21.) Spaddy responded that he did not have to shut up because "this was America." (*Id.* ¶ 22.) The officer then grabbed Spaddy by the arm. (*Id.*) Spaddy alleges that he did not resist or do anything unlawful, but instead asked the officer to release him given that he had paid his fare. (*Id.* ¶ 23.) The officer told Spaddy to stop resisting. (*Id.*)

Approximately five more officers then arrived and allegedly kicked and punched Spaddy, handcuffed him, and continued to kick and punch him after he was handcuffed. (*Id.* ¶ 24.) The

---

[3] The state court docket is a matter of public record which the Court can consider on a motion to dismiss. *See Walthour v. Miller*, No. 09-cv-05289, 2010 WL 2572656, at *5 (E.D. Pa. June 22, 2010).

officers placed Spaddy in a police car and drove to the 26th police district. (*Id.* ¶ 25.) At some point during the trip, one of the officers called Spaddy a "monkey." (*Id.*) After being at the station for approximately forty-five minutes, the officers took Spaddy to the "Roundhouse at 8th and Race Streets" where he was fingerprinted and processed. (*Id.* ¶ 26.) While being processed, Spaddy began wheezing due to his asthma. (*Id.*) Spaddy alleges that his need for medical attention was evident from his labored breathing and appearance after the beating he had taken earlier. (*Id.*) He contends the officers intentionally delayed taking him to the hospital in order to cause him further pain and suffering. (*Id.*)

The officers ultimately took Spaddy to Hahnemann Hospital where he was treated for his injuries and asthma related issues. (*Id.* ¶ 27.) After returning to the precinct, Spaddy was charged with resisting arrest and disorderly conduct and then "released on his own recognizance." (*Id.* ¶¶ 27–28.) Spaddy maintains that he neither resisted arrest nor engaged in disorderly conduct. (*Id.* ¶ 29.) On October 6, 2014 Judge Stephanie M. Sawyer found Spaddy not guilty on all charges stemming from the July 11 incident. (*Id.* ¶ 30.)

## II.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead factual allegations sufficient "to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "mere possibility of misconduct" is not enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The court must construe the complaint in the light most favorable to the plaintiff. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016) (citations omitted). A court should "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of

a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004). Whether a complaint states a plausible claim for relief is a context-specific task that "requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

Under *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. *See Connelly*, 809 F.3d at 787. First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

### III.

Spaddy alleges a number of federal claims under 42 U.S.C. Section 1983. To establish a prima facie case under Section 1983, Spaddy must demonstrate that a person acting under color of law deprived him of a federal right. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). Neither party disputes that the officers acted "under color of law" for purposes of a Section 1983 claim. Spaddy must also show that the person acting under color of law "intentionally" violated his constitutional rights or acted "deliberately indifferent" in violation of those rights. *See, e.g.*, *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 843–44 (1998); *Brower v. Cty. of Inyo*, 489 U.S. 593, 596 (1989) (citing *Hill v. California*, 401 U.S. 797, 802–05 (1971)); *Berg v. Cty. of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000).

Spaddy asserts his claims against Officer Martin and the unnamed officers individually and in their official capacities.[4] (Am. Compl. ¶¶ 4, 37–42.) Official capacity claims are

---

[4]     Defendants failed to address the claims against the officers in their individual capacities. Defendants contend that the "operative language" of the complaint "alleges that at all times Defendants were acting 'under color

essentially claims against the municipality. *See A.M. v. Luzerne Cty. Juvenile Detention Ctr.*, 372 F.3d 572, 580 (3d Cir. 2004). Because SEPTA is a named defendant and a municipality for purposes of this case, the Court dismisses the official capacity claims. *See, e.g.*, *Basile v. Twp. of Smith*, 752 F. Supp. 2d 643, 662–63 (W.D. Pa. 2010) (dismissing *sua sponte* claim against officer in his official capacity as duplicative of claim against municipality).

### A.

Spaddy alleges claims for false arrest and false imprisonment under the Fourth Amendment against Officer Martin and the unnamed officers. (Am. Compl. ¶¶ 4, 37–42.) False arrest and false imprisonment claims are nearly identical and generally analyzed together.[5] *See Brockington v. City of Phila.*, 354 F. Supp. 2d 563, 571 n.8 (E.D. Pa. 2005) (citation omitted). Both claims "are predicated on an arrest made without probable cause in violation of the Fourth Amendment." *Wilson v. Dewees*, 977 F. Supp. 2d 449, 455 (E.D. Pa. 2013) (citation and internal quotation marks omitted). Accordingly, an arrest supported by probable cause will negate both claims. *See Groman*, 47 F.3d at 636.

Spaddy alleges that both the June 8 and July 11 arrests were unsupported by probable cause. (Pl.'s Resp. at 10–11, ECF No. 36.) Following the June 8 arrest, however, Spaddy was

---

of state laws.'" (Defs.' Mot. to Dismiss at 8 n.4, ECF No. 8.) Defendants fail to note, however, that the Amended Complaint specifically states alternative claims against the officers in their individual capacities. (Am. Compl. ¶ 4.)

Because of this misunderstanding, Defendants failed to argue that the officers are entitled to qualified immunity for their actions. "The primary purpose of affording public officials the privilege of qualified immunity, thus insulating them from suit, is to protect them 'from undue interference with their duties and from potentially disabling threats of liability.'" *Wright v. City of Phila.*, 409 F.3d 595, 599–600 (3d Cir. 2005) (citation omitted). The privilege can be overcome when state officials violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Because Spaddy's complaint alleges violations of clearly established constitutional rights, the Court need not address the issue of qualified immunity.

[5] Spaddy also alleges a false imprisonment claim under state law. Because the standards for false imprisonment under state and federal law are essentially the same, the Court's analysis applies to both claims. *See, e.g.*, *Teeple v. Carabba*, No. 07-cv-2976, 2009 WL 5033964, at *17 (E.D. Pa. Dec. 22, 2009), *aff'd*, 398 F. App'x 814 (3d Cir. 2010).

charged with and found guilty of disorderly conduct and theft of services. *See* Docket, *Commw. of Pa. v. Richard M. Spaddy*, No. MC-51-SU-0013872-2013 (Phila. Cty. Ct. C.P. Oct. 16, 2013) (docket entries 2–3). The issue with respect to the June 8 arrest is therefore whether Spaddy's conviction negates his false arrest and false imprisonment claims.

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court of the United States examined whether a person convicted of a crime may recover damages related to his conviction under 42 U.S.C. Section 1983. The Court held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]

*Heck*, 512 U.S. at 486–87. If, however, the district court determines "that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." *Id*. at 487. For example, "a conviction and sentence may be upheld even in the absence of probable cause for the initial stop and arrest." *Montgomery v. De Simone*, 159 F.3d 120, 126 n.5 (3d Cir. 1998) (citing *Mackey v. Dickson*, 47 F.3d 744, 746 (5th Cir. 1995) (stating that "[i]t is well established that a claim of unlawful arrest, standing alone, does not necessarily implicate the validity of a criminal prosecution following the arrest")). Where probable cause for the convicted offense arises after the arrest, the validity of the conviction is not necessarily implicated by a subsequent false arrest claim. *See id.* The primary issue for Spaddy's June 8 arrest is therefore when probable cause for his conviction arose.

Spaddy contends that the officers arrested him on June 8 without probable cause. (Pl.'s Resp. at 10–11.) Spaddy fails to allege any events after his arrest and detention which provided

7

probable cause for his conviction. Thus, the only reasonable inference from the complaint is that the conviction was solely related to Spaddy's pre-arrest conduct on June 8. Probable cause for that conviction could only have developed from the June 8 incident absent any allegations to the contrary. The Court accordingly dismisses Spaddy's false arrest and false imprisonment claims based on the June 8 incident because finding otherwise would "necessarily implicate the validity of" his conviction. *See, e.g., Jackson v. City of Phila. Police Dept.*, 328 Fed. Appx. 762, 762–63 (3d Cir. May 27, 2009) (affirming dismissal of plaintiff's false arrest and false detention claims under Section 1983 because they were barred by *Heck*).

*Heck* does not, however, bar Spaddy's claims relating to the July 11 arrest. Spaddy contends that he did nothing wrong and did not resist arrest. (Pl.'s Resp. at 10–11.) Although Spaddy was charged in connection with the second incident, he was found not guilty. Taking Spaddy's allegations as true, he alleges both an unlawful arrest and detention sufficient to support his false arrest and false imprisonment claims based on the July 11 incident. The Court accordingly denies the unnamed officers' motion as to those claims. Because Officer Martin was not involved in the July 11 incident, *see supra* Part I.B., the Court dismisses the false arrest and false imprisonment claims against him as to both incidents.

**B.**

Spaddy asserts claims for malicious prosecution against the officers under the Fourth Amendment. (Am. Compl. ¶¶ 43–49.) To establish a malicious prosecution claim under Section 1983, "a plaintiff must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept

8

of seizure as a consequence of a legal proceeding."[6] *Johnson v. Knorr*, 477 F.3d 75, 81–82 (3d Cir. 2007) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)). Although prosecutors are generally responsible for initiating criminal proceedings, an officer may "be considered to have initiated a criminal proceeding if he or she knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion." *Brockington*, 354 F.Supp.2d at 569 (internal quotation marks omitted).

Regardless of the officers' alleged involvement, *Heck* bars Spaddy's malicious prosecution claim stemming from the June 8 events given that he was convicted of two crimes relating to his conduct that day. *See, e.g.*, *Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 645 (E.D. Pa. 2014) ("[A] finding that Plaintiff was maliciously prosecuted would necessarily imply the invalidity of his conviction, which is prohibited by the Supreme Court's ruling in *Heck*."). Spaddy also asserts that he was maliciously prosecuted following the July 11 incident when he was charged with resisting arrest and disorderly conduct. (Pl.'s Resp. at 13–16.) Spaddy contends that he did not resist arrest or engage in any disorderly conduct. (*Id.*) Because he was ultimately found not guilty of these charges, the proceeding ended in his favor.

While Spaddy does not specifically allege that the officers provided false information to the prosecutor or otherwise interfered with the prosecutor's discretion, the Court must draw all reasonable inferences from Spaddy's complaint at the 12(b)(6) stage. It is reasonable to infer that the officers allegedly provided false information to the prosecutor given that the charged offenses directly related to the July 11 incident involving those officers. The Court accordingly denies the unnamed officers' motion as to that claim. The Court grants Officer Martin's motion

---

[6] Spaddy also alleges a state law malicious prosecution claim. A claim for malicious prosecution under Pennsylvania law requires proof of only the first four elements of a federal malicious prosecution claim. *See Haefner v. Burkey*, 626 A.2d 519, 521 (Pa. 1993). Since this difference has no effect on the analysis, the Court considers Spaddy's state and federal malicious prosecution claims together.

on the malicious prosecution claim because he was not involved in the July 11 incident. *See supra* Part I.B.

### C.

Spaddy asserts claims for excessive force under the Fourth Amendment against the officers. (Am. Compl. ¶¶ 37–42.) The Court views excessive force claims in the arrest context as unreasonable seizures and accordingly analyzes them under the Fourth Amendment's "objective reasonableness" standard. *See, e.g., Curley v. Klem*, 499 F.3d 199, 206 (3d Cir. 2007) (citation omitted). To state a Fourth Amendment excessive force claim, Spaddy must "show that a seizure occurred and that it was unreasonable." *Boyden v. Twp. of Upper Darby*, 5 F. Supp. 3d 731, 736–37 (E.D. Pa. 2014) (quoting *Estate of Smith*, 430 F.3d at 148). When assessing reasonableness, the Court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation marks omitted). "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id*. (citing *Terry v. Ohio*, 392 U.S. 1, 20–22 (1968)). Determining whether an officer used force beyond what the threat justified "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

Taking Spaddy's allegations as true, the officers' use of force was disproportionate to the threat presented. On June 8, Spaddy was allegedly walking away when the officers followed him, grabbed him, threw him against a car, handcuffed him and forced him to the ground. (*Id.*)

While Spaddy lay on the ground, Officer Martin and others repeatedly punched and kicked him, kicked mud and dirt into his face and eyes, maced him and hit him in the legs with their blackjacks.  (*Id.* ¶ 10.)  On July 11, the officers allegedly kicked and punched him, handcuffed him, and continued to kick and punch him after he was handcuffed.  (*Id.* ¶ 24.)  If true, this force would be unreasonable under the circumstances.  The Court accordingly denies Defendants' motion with respect to the excessive force claim.

### D.

Spaddy alleges that the officers retaliated against him after he exercised his rights to criticize the police under the First Amendment.  (Am. Compl. ¶¶ 54–57.)  The First Amendment prohibits government officials from retaliating against an individual who lawfully exercises their right to free speech.  *See Karmo v. Borough of Darby*, No. 14-cv-2797, 2014 WL 4763831, at *4 (E.D. Pa. Sept. 25, 2014).  In order to state a claim for retaliation under the First Amendment, Spaddy must allege: "(1) that he engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation." *Id.* (quoting *George v. Reheiel*, 738 F. 3d 562, 585 (3d Cir. 2013)).  Spaddy must also allege facts showing that the retaliatory action was "sufficient to deter a person of ordinary firmness from exercising his First Amendment Rights."  *Id.* (quotation omitted).  Causation can be inferred from the close temporal proximity between the protected activity and the retaliatory act.  *See Clifton v. Borough of Eddystone*, 824 F. Supp. 2d 617, 628 (E.D. Pa. 2011) (citing *Marasco*, 318 F.3d at 512–13).

Aside from certain categories such as obscenity, fighting words and libel, "all speech is protected by the First Amendment."  *Id.* at 627 (internal quotation marks omitted).  This protection includes "a significant amount of verbal criticism and challenge directed at police

officers." *Karmo*, 2014 WL 4763831, at *4 (quoting *City of Hous., Tex. v. Hill*, 482 U.S. 451, 461 (1987)). "One is not to be punished for nonprovocatively voicing his objection to what he obviously felt was a highly questionable detention by a police officer." *Id.* (quoting *Norwell v. City of Cincinnati, Ohio*, 414 U.S. 14, 16 (1973)).

Spaddy allegedly expressed his innocence and his dissatisfaction with the officers' actions on both June 8 and July 11. (Am. Compl. ¶¶ 5–8, 21–23.) It therefore appears that he engaged in constitutionally-protected speech when he protested the officers' actions. In response to that activity, the officers allegedly beat, arrested and detained Spaddy. If true, such actions may establish the kind of retaliatory conduct prohibited by the First Amendment. *See Clifton*, 824 F. Supp. 2d at 628; *McKee v. Hart*, 436 F. 3d 165, 170 (3d Cir. 2006) (holding that the effect of retaliatory conduct "need not be great" but "must be more than *de minimis*" in order to be actionable).

### E.

Spaddy asserts that the officers denied him medical care in violation of the Fourteenth Amendment. (Am. Compl. ¶¶ 58–63.) The Court evaluates these claims under the same standard as those brought under the Eighth Amendment. *See, e.g.*, *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581–83 (3d Cir. 2003). Under this standard, Spaddy must provide evidence that the officers showed deliberate indifference to his serious needs. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A medical need is serious when it "has been diagnosed by a physician as requiring treatment" or is "so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (citations omitted). A medical need is also considered serious

where a denial of or delay in treatment results in the unnecessary and wanton infliction of pain, a life-long handicap or permanent loss.  *See id.*

Courts have found deliberate indifference where the plaintiff established that an officer ignored objective evidence of their serious need for medical care.  *See Natale*, 318 F.3d at 583. Ignorance of objective evidence occurs when an official: (1) knows of the plaintiff's medical need and intentionally refuses to provide care; (2) "delays necessary treatment based on a non-medical reason" or recklessly disregards a serious risk to the plaintiff's health; or (3) prevents the plaintiff from receiving needed or recommended medical treatment.  *See Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  Officers therefore demonstrate deliberate indifference where they deny reasonable requests for medical treatment and such denial exposes a plaintiff to "undue suffering or the threat of tangible residual injury."  *Lanzaro*, 834 F.2d at 346 (citations omitted).

Spaddy asserts that on June 8 officers detained him for approximately forty-five minutes before he received the medical care he needed due to the mud and dirt in his eyes.  (Am. Compl. ¶¶ 5, 13–15.)  He also contends that on July 11 the officers delayed taking him to the hospital after he began wheezing due to his asthma.  (*Id.* ¶¶ 19, 26.)  The officers allegedly knew or should have known that Spaddy was seriously injured and needed immediate medical treatment because he "writh[ed] in pain in their presence."  (*Id.* ¶ 59.)  Spaddy also "complained of intense pain" and told the officers he "could not see."  (*Id.*)  Taking these facts as true, Spaddy has sufficiently alleged that the officers were deliberately indifferent to his serious medical needs.

**F.**

Spaddy alleges against all officers a selective enforcement claim based on his race under the Equal Protection Clause of the Fourteenth Amendment.  (Pl.'s Resp. at 16.)  To state a claim for selective enforcement, Spaddy must demonstrate that: (1) he was treated differently from

other similarly situated individuals; and (2) this selective treatment was based on his race. *See Suber v. Guinta*, 927 F. Supp. 2d 184, 201 (E.D. Pa. 2013), *aff'd sub nom. Suber v. Wright*, 574 F. App'x 207 (3d Cir. 2014) (quotation omitted). Persons are similarly situated under the Equal Protection Clause when they are "alike in all relevant aspects." *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008). In cases of racial discrimination, the plaintiff must prove that the actions of officials had a discriminatory effect and were motivated by a discriminatory purpose. *See Lawson v. City of Coatesville*, 42 F. Supp. 3d 664, 675 (E.D. Pa. 2014).

Spaddy is African-American and therefore a member of a protected class. He contends that the "selective treatment" he endured at the hands of the officers was due to his race. However, Spaddy fails to allege any facts indicating that he was treated differently from other similarly situated individuals. Although he does allege that one of the officers uttered a racially derogatory comment, he fails to provide "any examples of similarly situated individuals in an unprotected class (or any similarly situated individuals, for that matter) who received different treatment." *Lawson*, 42 F. Supp. 3d at 675 (dismissing selective enforcement claim where plaintiff failed to identify similarly situated individuals who were treated differently). While the Court granted Spaddy leave to amend once already, that Order primarily concerned his *Monell* claim. The Court accordingly grants Spaddy leave to amend his selective enforcement claim to allege facts indicating he was treated differently from other similarly situated individuals.

## G.

Spaddy asserts his final Section 1983 claim against SEPTA under *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658 (1978). The Court treats SEPTA as a municipality for purposes of claims brought under Section 1983. *See, e.g.*, *Searles v. SEPTA*, 990 F.2d 789, 790 (3d Cir. 1993); *Feingold v. SEPTA*, 512 Pa. 567 (Pa. 1986). Generally, a municipality will not be

held liable under the doctrine of *respondeat superior* for the misconduct of its employees. *See Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990). Rather, a municipality can only be liable under Section 1983 when a constitutional injury results from the implementation or execution of an officially adopted policy or informally adopted custom. *See Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658 (1978)). A successful *Monell* claim must therefore establish: (1) an underlying constitutional violation; (2) a policy or custom attributable to the municipality; and (3) that the constitutional violation was caused by the municipality's policy or custom. *See Monell*, 436 U.S. at 658. Spaddy must also show that "an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (citing *Andrews*, 895 F.2d at 1480).

While the complaint sounds in a failure to train theory, Spaddy fails to establish the existence of a policymaker who deliberately chose not to provide training or acquiesced in a longstanding practice or custom of providing no training. While he alleges that a supervisory officer arrived at the scene and stated "I was not here," he does not allege who the officer was or what policymaking authority he had. Without any allegations establishing that this officer was responsible for policymaking within the SEPTA police force, Spaddy's *Monell* claim fails. The Court granted Spaddy leave to amend his *Monell* claim once already. Because he failed to cure the deficiencies a second time, the Court grants Defendants' motion as to this claim.

**IV.**

Spaddy asserts additional state law claims of false light invasion of privacy, defamation, assault and battery against the officers both in their individual and official capacities. (Am. Compl. ¶¶ 64–65.)

### A.

To state a claim for false light invasion of privacy, Spaddy must allege that: (1) the officers gave publicity to a matter concerning him that placed him before the public in a false light; (2) such action would be highly offensive to a reasonable person; and (3) the officers knew of or acted in reckless disregard to the falsity of the publicized matter. *See Casselli v. City of Phila.*, 54 F. Supp. 3d 368, 380 (E.D. Pa. 2014). Spaddy's complaint fails to allege any facts establishing that the officers publicized false information about Spaddy in a way that would be highly offensive to a reasonable person. The Court grants Defendants' motion as to that claim.

### B.

To establish defamation under Pennsylvania law, Spaddy must establish: "(1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion." *Valjet v. Wal-Mart*, No. 06-cv-01842, 2007 WL 4323377, at *5 (E.D. Pa. Dec. 11, 2007) (quoting 42 Pa. Cons. Stat. § 8343(a)). Similar to his false light invasion of privacy claim, Spaddy's defamation claim lacks any factual support in the complaint and the Court accordingly grants Defendants' motion as to that claim.

### C.

Spaddy asserts claims for assault and battery against the officers. Suits against officers in their official capacities constitute suits against SEPTA itself. *See, e.g.*, *Frazier v. SEPTA*, 868 F. Supp. 757, 761 (E.D. Pa. 1994). "It is well established that SEPTA is an agency of the Commonwealth and as such is afforded all of the sovereign immunity protections" enumerated in

42 Pa. Cons. Stat. Sections 8521–8522. *Id.* Generally, SEPTA's employees are also "entitled to official immunity for actions taken in the course of their duties." *Ascolese v. SEPTA*, 902 F. Supp. 533, 554 (E.D. Pa. 1995), *on reconsideration*, 925 F. Supp. 351 (E.D. Pa. 1996) (citing 42 Pa. Cons. Stat. §§ 8545–8546). However, to the extent that the officers' acts constitute "a crime, actual fraud, actual malice, or willful misconduct," they are not entitled to official immunity for their actions. 42 Pa. Cons. Stat. § 8550. Willful misconduct encompasses intentional torts. *See Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006); *Rosembert*, 14 F. Supp. 3d at 649 n.15.

"In Pennsylvania, an assault occurs when an actor intends to cause imminent apprehension of harm or offensive contact to another." *DeBellis v. Kulp*, 166 F. Supp. 2d 255, 280 (E.D. Pa. 2001) (citation omitted). Battery is established when an actor intends to cause harmful or offensive contact with the person of another. *See id.* In making an arrest, a police officer "is justified in the use of any force which he believes to be necessary to effect the arrest and of any force which he believes to be necessary to defend himself or another from bodily harm while making the arrest." 18 Pa. Cons. Stat. § 508. Taking Spaddy's allegations as true, he sufficiently alleges both an assault and battery. The officers allegedly beat him, arrested him without probable cause and continued to beat him while he was handcuffed. The Court accordingly denies Defendants' motion as to the assault and battery claims.

    An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.